IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01863-WJM-MJW

REBECCA CONCILIO,

Plaintiff,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

Defendant.

---

**REPORT AND RECOMMENDATION ON PLAINTIFF REBECCA CONCILIO'S ERISA COMPLAINT
(DOCKET NO. 2)**

---

**Michael J. Watanabe**
United States Magistrate Judge

This case is before the Court on Plaintiff Rebecca Concilio's ("Concilio") Complaint (Docket No. 2) to recover health insurance benefits under section 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Judge William J. Martinez referred the Complaint to the undersigned Magistrate Judge for a recommended disposition. (Docket No. 34.) The Court has reviewed the Administrative Record ("AR") (Docket No. 15), the parties' Opening Briefs (Docket Nos. 26 & 27), Response Briefs (Docket Nos. 28 & 29), and Reply Briefs. (Docket Nos. 32 & 33.) The Court has taken judicial notice of the Court's file, and considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law,

and recommendation.[1]

## I. BACKGROUND

Concilio is a dental assistant seeking medical benefits under the DentalOne Partners Open Access Plus Medical Benefits Health Savings Plan Account (the "Plan"). The Plan is sponsored and administered by DentalOne, Inc. (AR at 156-27.) Defendant Cigna Health and Life Insurance Company ("Cigna") insures the Plan and acts as the claim administrator. (AR at 127.) DentalOne, Inc. has delegated to Cigna "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." *(Id.)* This includes the discretionary authority "to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative." (*Id.*)

Concilio was injured in an automobile accident on September 19, 2013, when her vehicle was struck by another vehicle and hit a concrete barrier at about 65 miles per hour. (AR at 413; 441.) She was evaluated for lower back pain by Dr. Christopher Cain on November 5, 2013. (AR at 413.) Dr. Cain noted that since the accident, Concilio had undergone "some physical therapy that has tended to aggravate rather than help her pain," and that radiographs revealed "reduced disk height at both L4-5 and L5-S1, with the changes at L5-S1 more advanced." (AR at 415.) Concilio was

---

[1] As Judge Martinez has stated, "where the parties have not disputed the completeness of the Administrative Record . . . this Court treats the case as presenting cross-appeals under Fed. R. at App. P. 28.1, and resolves the case on the pending papers." *Kaferly v. Metro. Life Ins. Co.*, 189 F. Supp. 3d 1085, 1092 (D. Colo. 2016) (citation omitted).

advised to focus on core stabilization and she was given exercises to perform. (*Id.*)

Concilio returned to Dr. Cain on December 26, 2013, due to worsening pain that physical therapy did not alleviate. An MRI revealed degeneration of L4-5 and L5-S1 with reduced disk height at both levels. (AR at 409; 411-12.) Concilio and Dr. Cain discussed "at length about the fact that in the absence of neural compression or instability surgery should be considered a last resort, and that at this stage she should focus on core stability and weight reduction." (AR at 409-10.) Concilio admitted that she had not been doing her exercises (AR at 410), although it appears that she told physician's assistant Robert V. Cooley Jr. that she had been performing her exercises "several times per week." (AR at 408.) Medical staff stressed the importance of these exercises–mini crunches and back extensions, performed twice a day, and swimming–and Concilio was told to follow up in three months. (AR at 407.) At that time, if pain persisted in spite of the regular and appropriate performance of the stabilization exercises, surgery would be discussed as an option. (AR at 410.)

Concilio was evaluated by Dr. Cain again on April 3, 2014. (AR at 406.) She had been unable to lose weight or do her core strengthening exercises, stating that any extension activity aggravated her pain. (AR at 404; 406.) Although she had been walking for exercise, the pain was too great for her to ride her horses at more than a walking pace. (*Id.*) Dr. Cain informed Concilio that "it is up to her to decide if her symptoms and limitations warrant surgery as she has no features of instability on flexion and extension and no neural compromise despite her lower limb numbness." (AR at 406.) She was told to consult with her primary care physician regarding whether to proceed with a CT discography to confirm that the disc degeneration was responsible

3

for her pain. (*Id.*)

Concilio underwent a discography on April 30, 2014. (AR 402-03.) Discs L3-L4 (the control disc), L4-L5, and L5-S1 were injected with dye in order to mimic her lower back pain. (AR at 400-01.) Concilio had no pain at the L3-L4 control level, but she experienced significant increases in pain at L4-L5 and L5-S1. (AR at 401.)

Dr. Cain reviewed the result of the discography with Concilio on May 8, 2014. (AR at 396.) Dr. Cain opined that "the result was pretty clear cut in that the results confirm a localized origin of her back and leg pain," and stated that Concilio "has low back pain and radiating S1 left leg pain progressively worsening over the past six months despite extensive non operative treatment." (*Id.*) The two discussed her options going forward, including surgical procedures such as disc replacement and Anterior Lumbar Interbody Fusion ("ALIF"). (*Id.*) Concilio favored disc fusion, and she was put in touch with the surgery scheduler to arrange for the ALIF procedure. (*Id.*)

The Plan required Concilio or her physician to obtain preservice authorization from Cigna that the surgery was medically necessary. (AR 47; 122.) On June 17, 2014, Cigna denied Concilio and Dr. Cain's request to cover the ALIF procedure. (AR at 418.) Dr. Gregory Przybylski, a Cigna medical director, made the decision to deny Concilio's treatment, stating:

> Based upon current available information, coverage cannot be approved because there is insufficient scientific evidence that shows the safety and/or effectiveness of lumbar fusion for the management of multiple-level degenerative disc disease (more than 1 level). At the present time, each is considered non-standard therapy and falls under the category of experimental/investigative/unproven. Your benefit plan does not cover experimental/investigational/ unproven services.

4

(AR at 419.)

In the denial, Dr. Przybylski also cited Cigna's criteria for authorizing a single lumbar fusion, and found that Concilio did not establish that this procedure was medically necessary. Dr. Przybylski determined that the medical records and documentation did not confirm that Concolio: (1) had "unremitting pain accompanied by significant functional impairment for at least 12 months"; (2) had "failed at least 6 months of a structured, physician-supervised conservative medical management program as outlined including exercise, medications, physical therapy, and activity modification"; (3) had single degenerative disc disease as the likely cause of her pain; (4) had another qualified physician to "support the absence of untreated, underlying psychological conditions/issues as a contributor to chronic pain"; and (5) had "completed a course of cognitive behavioral therapy as outlined." (AR at 419-20.)

The denial was also accompanied with an explanation of how Concilio could appeal Cigna's decision. (AR at 420.) A request for review could be done in writing or by phone, and the appeal goes to a different physician. (AR at 420-21.)

Dr. Cain called Dr. Przybylski on June 24, 2014 for a "Peer to Peer" conversation. (AR 307; 416-17.) Dr. Cain "argued about the overwhelming international evidence supporting one or two level fusion" for degenerative disc disease, while Dr. Przybylski "explained Cigna's noncoverage of multilevel fusion for this clinical indication and the rationale behind it." (*Id.*) The doctors also discussed the Brox and Fritzell studies. (*Id.*) Dr. Przybylski did not change his original decision. (*Id.*) No appeal was taken.

Following the denial, on July 27, 2014, Concilio presented to Dr. Michael J.

5

Rauzzino, a neurosurgeon at Front Range Neurosurgery, for a second opinion. (AR at 432.) Although he expressed reservations about "performing such an aggressive procedure at age 26," Dr. Rauzzino stated that the two-level anterior lumbar fusion proposed by Dr. Cain was reasonable in light of the severity of the findings and Concilio's symptoms. (AR at 434.) Dr. Rauzzino did not think that epidural steroid injections would be helpful, and did "not know that there is any additional therapy to be done." (*Id.*) During a follow-up visit on September 14, 2014, Dr. Rauzzino confirmed his impression that Concilio would be a good candidate for a L4-S1 fusion. (AR at 430-31.)

Cigna denied Concilio's second request for surgery on October 16, 2014. (AR at 441.) On October 21, 2014, Dr. Przybylski and Dr. Rauzzino had a "Peer to Peer" conversation about the denial, during which Dr. Rauzzino expressed confusion as to why Cigna covered single level fusions but not two-level fusions. (AR at 442-43.) Dr. Przybylski told him he stopped performing two-level fusions for degenerative disc disease in 2000 due to limited observable benefits, and the two argued about the literature on subject. (*Id.*) Dr. Przybylski maintained his denial of the procedure. (*Id.*)

On November 3, 2014, Dr. Rauzzino appealed the decision. (AR at 452-54.) In his appeal, Dr. Rauzzino cited the unfairness of Cigna's authorization of the discography, which he described as a painful and invasive diagnostic procedure, when there was no realistic expectation that the fusion would be approved. (AR at 453.) He also stated that two-level fusions are not "experimental," but are instead considered routine and appropriate under the Colorado State Workers' Compensation guidelines. (*Id.*) Dr. Rauzzino had first-hand experience of this; he sat on the Colorado Medical Society Board, which had recently reviewed the workers' compensation low back pain

guidelines. (*Id.*) He also stated that other insurance companies routinely permit two-level fusions. (*Id.*)

In addition to drafting the appeal, Dr. Rauzzino evaluated Concilio on November 3, 2014. (AR at 455.) He opined that she did not need cognitive behavioral therapy to treat her back pain, and stated that although conservative therapy has failed, Concilio would try repeating physical therapy while the appeal was pending. (*Id.*)

Cigna denied the appeal on December 3, 2014, citing its previous rationales. (AR at 474-77.) Cigna medical director Dr. David E. Mino, Dr. Przybylski's supervisor, signed the denial. (AR at 477.)

On December 18, 2014, Dr. Rauzzino faxed a letter "revisit[ing]" the appeal, in which he reiterated his earlier arguments. He also requested an independent review of Cigna's decision. (AR at 528.) The external review of Concilio's records was performed by IMED, Inc. ("IMED"). (AR at 528-33.) The independent reviewer found that the information provided did not support a lumbar fusion. (AR at 531-32.) Specifically, although the IMED reviewer (1) quoted a study that stated that "the body of literature supports the fusion surgery as a viable treatment option for reducing pain and improving function in patients with chronic low back pain refractory to non-surgical care when a diagnosis of disc degeneration can be made," and (2) recognized that there was evidence that Concilio suffered from degenerative disc disease, it was determined that "the records do not conclusively indicate that the patient has failed all lesser measures." (AR at 532.) The two-level fusion was deemed not medically necessary and the denial was upheld. (*Id.*) It should be noted that IMED did not review Dr. Cain's notes. (AR at 530-31.)

7

On May 27, 2015, Cigna denied a final request for authorization of the two-level fusion procedure. (AR at 574-79.) The request was made by Dr. Lloyd Mobley. (AR at 542-43.) Dr. Mobley performed the surgery on July 27, 2015. (AR at 721-29.) Concilio was billed $377,233.50 for the operation. (AR at 598-606.) She filed the Complaint at issue on June 13, 2016 in Denver District Court. (Docket No. 2). The case was then removed to federal court on July 21, 2016. (Docket No. 1.)

## II. LEGAL STANDARD

Judge Martinez has set forth the standard of review in an ERISA action as follows:

> ERISA governs employee benefit plans, including disability benefit plans. 29 U.S.C. §§ 1101 *et seq*. "When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; alterations incorporated). Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws. 29 U.S.C. § 1144(a).
>
> The Supreme Court has held that "a denial of benefits challenged under [the civil enforcement provision of ERISA, 29 U.S.C.] § 1132(a)(1)(B) [,] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In such a situation, the Court determines whether the denial of benefits was arbitrary and capricious. *Id.*
>
> Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or

8

> the best one; the decision will be upheld provided that it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).

*Lamont v. Connecticut Gen. Life Ins. Co.*, 215 F. Supp. 3d 1070, 1077 (D. Colo. 2016).

Although Concilio originally argued that a de novo standard of review is appropriate, she has since conceded that the Plan gives Cigna the discretionary authority to determine eligibility for benefits. (Docket No. 26 at p. 12.) As such, the Court applies an "arbitrary and capricious" standard of review, and "the decision will be upheld so long as it is predicated on a reasoned basis" or is supported by substantial evidence. *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Further, when an insurer is also the administrator of a plan, as is the case here, it operates under an inherent conflict of interest, which is weighed as a factor in determining whether there is an abuse of discretion. *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009).[2] The burden of showing abuse remains on the plaintiff. *McClenahan v. Metro. Life Ins. Co.*, 416 F. App'x 693, 697 (10th Cir. 2011) (unpublished).

### III. ANALYSIS

**a. Did Concilio Exhaust Her Administrative Remedies?**

Drs. Cain and Mobley did not appeal Cigna's denial of their surgery authorization

---

[2] The terms "abuse of discretion" and "arbitrary and capricious" are used interchangeably in the Tenth Circuit. *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 n. 10 (10th Cir. 2008).

requests. Therefore, it must first be determined whether the merits of these denials are properly before the Court.

"Although ERISA contains no explicit exhaustion requirement, courts have uniformly required that participants exhaust internal claim review procedures provided by the plan before bringing a civil action." *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1203 (10th Cir. 2014). *See also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013) ("A participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial."). In the Tenth Circuit, the "exhaustion of administrative (i.e., company-or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (citation and quotation marks omitted). There are three general exceptions to this requirement: (1) when resort to administrative remedies would be futile; (2) when the remedy provided is inadequate; and (3) when a plan has failed to establish or follow claims procedures consistent with the requirements of ERISA. *Holmes*, 762 F.3d at 1204.

Concilio argues that Drs. Cain and Mobley's authorization requests are not separate claims subject to exhaustion. Instead, she asserts that their requests and recommendations are identical to those made and appealed by Dr. Rauzzino, and therefore make up the same claim for benefits. Concilio also argues that any administrative appeal of these denials would be futile because Cigna has a blanket policy of never authorizing multilevel procedures for degenerative disc disease.

Concilio's first argument is unavailing. The Plan provides for an appeal process

10

in the event Cigna makes an adverse decision as to the medical necessity of a requested clinical procedure. (AR at 128-31.) This process includes a mandatory appeal and a voluntary independent review. (*Id.*) Plan participants are expressly warned that "[i]n most instances, you may not initiate a legal action against Cigna until you have completed the Complaint or Adverse Determination Appeal process." (AR at 131.) Drs. Cain and Mobley were informed how to initiate an appeal after their preservice authorization requests were denied. (AR at 420-21; 576-78.) They chose not to do so. Only Dr. Rauzzino requested an appeal and, when that failed, an independent review. (AR at 452-54; 528.)

Not only did Drs. Cain and Mobley not abide by the terms of the Plan, the Court agrees with Cigna that while the procedure requested by the three physicians is the same, the circumstances surrounding the requests were not identical. Dr. Cain's request for the two-level fusion came approximately one year before Dr. Mobley's. This passage of time alone gives the Court pause, especially because Dr. Cain noted on Concilio's first visit that the "natural course of this type of back pain is that most patients get better on their own within three months." (AR at 413.) Moreover, during that time, Concilio received further treatment, including the discography and epidural injections. Most importantly, Dr. Mobley's diagnosis was different than that of Drs. Cain and Rauzzino. Dr. Mobley diagnosed Concilio with spondylolisthesis (i.e., spinal instability) (AR at 548), while the other doctors failed to note any instability. (AR at 409; 406; 430.) Thus, the recommendations and requests of the doctors are not part of the same claim for the purposes of administrative exhaustion.

Nevertheless, the Court agrees with Concilio that the failure to exhaust

11

administrative remedies as to Dr. Cain's request can be excused as futile in this case. The Tenth Circuit stated in an unpublished decision, "We agree with the Seventh Circuit's approach to evaluating a claim of futility and hold that in order to satisfy the futility exception to the exhaustion requirement, plaintiff must establish that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'"*Rando v. Standard Ins. Co.*, 182 F.3d 933 (10th Cir. 1999) (table) (*quoting Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)) (brackets omitted). While this decision is not binding, Judge Martinez has found that the bar for showing futility is high. *See Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1110 (D. Colo. 2016).

The Court finds that Concilio has cleared this high bar as to Dr. Cain, but not as to Dr. Mobley. The Plan excludes from coverage "experimental, investigational or unproven services." (AR 108.) The Plan defines "experimental, investigational, or unproven services" to be services that are, among other things, "determined by the utilization review Physician to be 'not demonstrated, through existing peer-reviewed, evidence based, scientific literature to be safe and effective for treating . . . the condition or sickness for which its use is proposed.'"*Id*. Cigna's Lumbar Fusion Medical Coverage Policy considers "lumbar fusion for treatment of multiple-level (i.e., >1 level) degenerative disc disease" to be "experimental, investigational, or unproven." (AR at 245.) Thus, the Plan does not cover multilevel lumbar fusions for degenerative disc disease. Significantly, though, the Plan does cover this procedure for spondylolisthesis. (AR at 242-43.)

Cigna argues that although it denied the various requests for preservice

authorization based on the Lumbar Fusion Medical Coverage Policy, an appeal by Drs. Cain or Mobley showing that Concilio had completed a conservative treatment program or had evidence of spinal instability could have led to a different result. This is contradicted by all the evidence in the record as to Cigna's treatment policies for degenerative disc disease. Dr. Przybylski cited Cigna's policy against performing multilevel fusions for this condition over and over: he explained Cigna's non-coverage of multilevel fusion and the rationale behind it to Dr. Cain (AR at 417), and he told Dr. Rauzzino why single-level fusion is covered but multilevel is not and stated why he stopped performing two-level fusions in 2000. (AR at 443.) Moreover, in denying Dr. Rauzzino's appeal, Dr. Mino expressly states the Plan does not cover multilevel lumbar fusion. (AR at 475.) Cigna also relies on this policy its legal briefs. (*See* Docket No. 29 at pp. 9-12.) In short, there is no doubt that Cigna would have denied any appeal by Dr. Cain requesting a two-level lumbar fusion for degenerative disc disease because this procedure is not covered under the Plan. At most, had Dr. Cain showed that Concilio been diligent regarding a conservative treatment program, she may have met Cigna's criteria for a single-level fusion. Concilio never requested this procedure.

On the other hand, had Dr. Mobley appealed and demonstrated spinal instability, there is a chance that he could have prevailed. Cigna does not have a blanket prohibition of multilevel fusions for spondylolisthesis, and IMED stated in its independent review that upon review of the record before it, "[t]here is no indication of spondylolisthesis or other significant instability noted." (AR at 532.) Thus, Concilio did not exhaust her administrative remedies as to this claim.

For these reasons, the Court will consider Cigna's denial of only Drs. Cain and

13

Rauzzino's authorization requests.

### b. Was Cigna's denial arbitrary and capricious?

Next, the Court must determined whether Concilio has met her burden of demonstrating that Dr. Przybylski, Dr. Mino, and/or IMED's denials of the L4-S1 fusion were arbitrary and capricious; i.e., whether they lacked a reasonable basis or were not supported by substantial evidence. *See McClenahan*, 416 F. App'x at 697.In determining whether there was substantial evidence, the Court will consider whether a "reasonable mind might accept [it] as adequate to support the conclusion reached by the [decisionmaker]." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir.1992) (citation omitted). While the decisionmaker must take into account "whatever in the record fairly detracts from" its determination, substantial evidence requires "more than a scintilla but less than a preponderance." *Id.* (citation omitted).

Further, while it is obvious that the medical opinions of Drs. Cain and Rauzzino differ from those held by Drs. Przybylski and Mino, Cigna was not required to "accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Court will not weigh or evaluate the medical evidence in record. *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 726 n. 4 (10th Cir. 2012) (unpublished). Thus, Concilio must establish that there was more than a mere disagreement among physicians regarding appropriate treatment.

### i. Dr. Przybylski

Concilio argues that her surgery was routine, and that Dr. Przybylski cherry-picked and "intractably relied" on the "Brox" and "Fritzell" studies to deny her benefits. The Court disagrees with this characterization for several reasons. First, a review of the record indicates that a multilevel fusion procedure for degenerative disc disease is not the "routine" surgery Concilio makes it out to be. Dr. Cain's notes indicate that he viewed surgery as a last resort, given Concilio's diagnosis. (AR at 409-10.) Dr. Rauzzino also expressed reservations about performing what he described as an "aggressive procedure" on someone Concilio's age. (AR at 434.) Dr. Rauzzino's remarks certainly suggest that it would be reasonable to fall on the other side of the debate.

As to the Brox and Fritzell studies, although Drs. Cain and Przybylski "discussed" these studies in their Peer to Peer meeting, Dr. Przybylski also explained the rationale for Cigna's policy to not cover multilevel fusions for Concilio's condition. Presumably, he was referring to Cigna's Lumbar Fusion Medical Coverage Policy, which contains a summary of the medical literature–including, among others, the Brox and Fritzell studies–related to standard approaches to lumbar surgeries. Dr. Cain also inquired into Dr. Przybylski's medical background and training and his experience with fusion surgeries. (AR at 417.) The record demonstrates that Dr. Przybylski relied on more than just two, "cherry-picked" studies to defend his denial to Dr. Cain.

Moreover, contrary to Concilio's claim, it is not obvious from the record to what extent Dr. Przybylski "relied" on the Brox and Fritzell studies. Importantly, Concilio and the Lumbar Fusion Medical Coverage Policy's summaries of the studies seem to be

15

largely consistent. For example, both would agree that the Fritzell study shows that in certain circumstances, lumbar fusion was significantly superior to nonsurgical treatment for chronic low back pain. (AR at 250.) Indeed, Dr. Przybylski spent an hour listening to Dr. Rauzzino criticize Cigna's non-coverage policy "given that one study shows no benefit (but no worse) and another study shows benefit in 1 and 2 level fusions." (AR at 442-43.) In response, Dr. Przybylski pointed out the limitations of these studies, and encouraged Dr. Rauzzino to read the literature in greater depth. (*Id.*) This indicates that it was Dr. Rauzzino who was, at least in part, relying on the quoted literature, while Dr. Przybylski pushed back on his interpretation of the data. Moreover, in addition to discussing the literature, Dr. Przybylski disclosed his own experience with patients with degenerative disc disease, why he had not performed a two-level fusion since 2000, and how he treated the disease without surgery. (*Id.*) Under these circumstances, the Court cannot say that Dr. Przybylski's decision lacked a reasonable basis or was not supported by substantial evidence.

Concilio also contests Dr. Przybylski's determination that she did not establish that the ALIF procedure was medically necessary because she failed to meet certain listed criteria. The Court admits it is confused by Dr. Przybylski's reasoning here. The criteria cited expressly relate to the medical necessity of a single-level lumbar fusion. Whether Concilio met these conditions is irrelevant because she never requested a single-level fusion. This does not change the Court's overall analysis, however. Even assuming Concilio had met the conditions set forth for medical necessity, Dr. Przybylski's finding that the procedure was experimental/investigational/unproven would still preclude the authorization of a multilevel fusion.

16

In sum, the record indicates that Dr. Przybylski's denial of benefits had a reasonable basis and was supported by substantial evidence, which includes the Lumbar Fusion Medical Coverage Policy and his own medical experience. Concilio has not presented sufficient evidence to show that Dr. Przybylski was biased. Therefore, Concilio has failed to meet its burden that Dr. Przybylski abused his discretion.

### ii. Dr. Mino

Concilio argues that Dr. Mino failed to provide any explanation or analysis in his decision to uphold the denial of benefits. The Court disagrees. Consistent with Dr. Przybylski determinations, Dr. Mino stated that multilevel lumbar fusion for degenerative disc disease is considered experimental, investigational, and/or unproven and was therefore not covered by the Plan. (AR at 477-77.) He based his decision on a review of Dr. Rauzzino's records and cited to Cigna's Lumbar Fusion Medical Coverage Policy. (AR at 475.) He provided a link to the policy. (*Id.*) The policy contains a relatively thorough review of the low back pain treatment. It recognizes that there have been few published clinical trials that have compared lumbar fusion to non-operative care, and suggests the proof of efficacy for surgery is unclear. (AR at 248.) The evidence cited is sufficient to support Dr. Mino's determination that the proposed ALIF procedure was not covered under the Plan.

### iii. IMED

Finally, Concilio objects to the independent reviewer's decision to affirm the denial of benefits. Concilio notes that IMED determined that fusion surgery was effective and appropriate for the treatment of degenerative disc disease, but based its

17

denial on the fact that "the records do not conclusively indicate that [Concilio] failed all lesser treatments." (AR at 532.) Concilio argues that Cigna's failure to provide IMED with Dr. Cain's records undermines IMED's decision. The Court is unpersuaded.

First, Dr. Cain's records do not "conclusively indicate" that lesser, non-surgical treatments failed. When he initially evaluated Concilio, Dr. Cain stressed that she should focus on conservative care and core stabilizing exercises, despite Concilio's complaint that physical therapy aggravated her pain. (AR at 415.) Two months later, Concilio admitted to Dr. Cain that she had not been doing her exercises. (AR at 410.) Dr. Cain reiterated the importance of these exercises, and also told her to also focus on losing weight. (*Id.*) When she reported back in April, she had been unable to lose weight and, while she was walking regularly, she could not perform her other exercises. (AR at 406.) She and Dr. Cain then spoke about ways to modify her exercises, but the focus seems to have already been on surgical intervention. (AR at 406.) Given this spotty record of compliance with instructions regarding conservative treatment, it is surprising that in May 2014, Dr. Cain noted that Concilio's lower back pain had been worsening "despite extensive non operative treatment." (AR at 396.)[3] This conclusion finds little support in the record.

Moreover, IMED did review Dr. Rauzzino's records, and he repeatedly stated that Concilio failed conservative therapy. He specified in November 2014 that she had "over a year of consecutive months of medical management including core stabilization exercises, nonsteroidal anti-inflammatories, steroid medications, physical therapy with

---

[3] For example, swimming was suggested as an exercise. (AR at 407.) There is no indication that Concilio followed instructions to swim 2-3 times per week.

18

both active and passive modalities, and activity modification." (AR at 455.) Some of this is inaccurate and even undermined by Dr. Cain's treatment notes. For example, Concilio admitted in December 2013 she not been performing her core stabilization exercises, and thereafter she had generally been physically unable to do much more than walk for exercise. Moreover, she told Dr. Cain that she had "some" physical therapy. (AR at 415.) According to Dr. Mobley's notes, she only went to a total of six or seven physical therapy visits during this entire period of time. (AR at 548.) It is also unclear what, if any, conservative treatment Concilio actually pursued while under Dr. Rauzzino's care. Even without this contradictory evidence, however, IMED still found that, based on the medical records, including Dr. Rauzzino's treatment notes, Concilio had failed to exhaust lesser treatment options. The Court does find this conclusion to be arbitrary or capricious.

## IV. RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Plaintiff Rebecca Concilio's Complaint (Docket No. 2) be **DISMISSED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), **and also waives appellate review of both factual and legal questions,** *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:     November 30, 2017        */s/ Michael J. Watanabe*
           Denver, Colorado           Michael J. Watanabe
                                                        United States Magistrate Judge