**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1863-WJM-MJW

REBECCA CONCILIO,

     Plaintiff,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation,

     Defendant.

---

**ORDER VACATING DENIAL OF BENEFITS AND
REMANDING FOR FURTHER PROCEEDINGS**

---

     In this case brought pursuant to 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Rebecca Concilio ("Concilio") challenges the decision of Defendant Cigna Health and Life Insurance Company ("Cigna") to deny pre-authorization for a spinal fusion surgery that Concilio believes is necessary to relieve her lumbar pain. After completion of briefing, the Court referred the matter to United States Magistrate Judge Michael J. Watanabe (since retired) for a report and recommendation. (ECF No. 34.) The Magistrate Judge issued his report and recommendation ("Recommendation"), recommending that Cigna's denial be upheld. Concilio timely objected (ECF No. 36) and Cigna responded to that objection (ECF No. 37). The Court has now reviewed the Recommendation, Concilio's objection, Cigna's response, as well as the parties' pre-Recommendation briefing (ECF Nos. 26–29, 32–33) and many portions of the Administrative Record (ECF No. 15, cited below as "R.").

For the reasons explained below, the Court adopts all of the Magistrate Judge's recommendations save for his recommendation to uphold the decision of an external reviewer that evaluated and affirmed Cigna's denial. Cigna's denial is therefore vacated and remanded for re-submission to an external reviewer.

## I. RULE 72(b) STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* An objection is proper if it is filed within fourteen days of the magistrate judge's recommendations and is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (internal quotation marks omitted).

Concilio timely objected to the Recommendation. (ECF No. 36.) Concilio objects to nearly every portion of the Recommendation that disfavors her position, and her objections are sufficiently specific to focus the Court's attention on the matters truly in dispute. Accordingly, the Court must review *de novo* the matters objected to.

## II. BACKGROUND

The Administrative Record reveals the following.

### A. Concilio's Health Plan

At all times relevant to this dispute, Concilio participated in a Cigna-administered, ERISA-governed health plan offered by her employer. (R. at 51, 53, 126–27.) The plan

covered medical services and supplies "recommended by a Physician, and [that] are Medically Necessary for the care and treatment of an Injury or Sickness, as determined by Cigna." (R. at 22, 93.) The plan did not cover "experimental, investigational or unproven services," which are services "that are determined by the utilization review Physician to be . . . not demonstrated, through existing peer-reviewed, evidence based, scientific literature to be safe and effective for treating . . . the condition or sickness for which its use is proposed." (R. at 35, 108.)

As part of enforcing the medical necessity requirement and the experimental/ investigational/unproven exclusion, Concilio's plan required pre-service authorization for most surgical procedures. (R. at 47, 121–22.) If Cigna denies pre-service authorization, a claimant who intends to seek redress for that denial must first submit an internal appeal. (*Id.*) If the internal appeal is unsuccessful, the claimant has the option of requesting an external appeal to be decided by an "Independent Review Organization," or to file a lawsuit such as this one. (R. at 48–49, 130–31.) If the claimant elects an external appeal and it is successful, Cigna "will abide by [that] decision." (R. at 48, 130.) If it is unsuccessful, the claimant's only remaining recourse is a lawsuit. (R. at 49, 131.)

**B.     Concilio's Lumbar Injury & Treatment Received from Dr. Cain**

1.     <u>The Injury</u>

Concilio was injured in an automobile accident in September 2013. (R. at 413.) She was able to walk away from the accident but began feeling low back pain immediately. (*Id.*) X-rays of her lumbar spine showed disc space narrowing at L4-5 and L5-S1. (*Id.*)

2.    <u>Multiple Visits to Dr. Cain</u>

In November 2013, Concilio visited an orthopedic surgeon, Dr. Christopher Cain. She reported to Dr. Cain that she had recently tried physical therapy, which "tended to aggravate rather than help her pain." (R. at 415.) Dr. Cain nonetheless recommended that Concilio "focus on core stabilization" and he "demonstrated exercises she should perform on a daily basis at home." (*Id.*)

The following month, Concilio had an MRI on her lumbar spine and then returned to Dr. Cain. (R. at 409.) Consistent with her prior x-rays, the MRI revealed "degeneration of L4-5 and L5-S1 with reduced disk height at both levels." (*Id.*) But there was no "neural compression or instability" (the matter of spinal instability becomes important below) so "surgery should be considered a last resort." (R. at 409–10.) Dr. Cain recommended that Concilio

> focus on core stability and weight reduction. She admitted that she ha[d] not been performing the exercises [he] demonstrated and asked her to perform previously on a regular basis, and [he] went over the importance of [those exercises] and again demonstrated how they should be done.

(R. at 410.)

Concilio saw Dr. Cain again in April 2014. Concerning weight loss, she reported that her efforts have been unsuccessful and that she planned to go to her primary care physician to explore whether some medical condition might be preventing her ability to lose weight. (R. at 404.) As for the recommended core strengthening exercises, she reported "difficulty . . . , particularly any extension activities as this aggravates her pain." (R. at 406.) Dr. Cain therefore discussed "ways she could modify her exercises in order to limit the symptoms." (*Id.*) He further advised that "it is up to her to decide if her

4

symptoms and limitations warrant surgery as she has no features of instability on flexion and extension and no neural compromise." (*Id.*) Dr. Cain informed Concilio that if she wanted to explore her surgical options seriously, he would first "request CT discography to ensure the degeneration we see is actually responsible for her [pain]." (*Id.*)

Concilio underwent the CT discography procedure and again returned to Dr. Cain in May 2014. At the discography procedure, the radiologist injected a contrast fluid into the affected discs (L4-5 and L5-S1) as well as into the normal-looking disc immediately above (L3-4) as a control. (R. at 402.) The injection into the control disc produced no pain. (R. at 400.) The injections into the affected discs both produced the sort of lumbar pain Concilio has felt since her auto accident. (R. at 401.) The radiologist also observed grade 5 annular tears in both of the affected discs. (R. at 403.) Finally, at the L5-S1 level, some of the injected fluid leaked from the disc, a situation known as "extravasation." (*Id.*)

Interpreting these results, Dr. Cain said "the result was pretty clear cut" in "confirm[ing] a localized origin of her back and leg pain." (R. at 396.) Dr. Cain discussed the types of surgical procedures Concilio could undergo given those results, and Concilio elected for an anterior lumbar interbody fusion ("ALIF") procedure. (*Id.*)

3. Denial of Pre-Service Authorization

Dr. Cain submitted a pre-service authorization request for a two-level ALIF, which Dr. Gregory Przybylski, a Cigna medical director, denied in June 2014. Dr. Przybylski explained that "there is insufficient scientific evidence that shows the safety and/or effectiveness of lumbar fusion for the management of multiple-level degenerative disc disease (more than 1 level)," so the proposed procedure was "experimental/ investigational/unproven" and therefore ineligible for coverage. (R. at 419.)

Dr. Przybylski also reasoned that Concilio had not met the requirements for a *single-level* fusion procedure in the absence of lumbar instability. Those requirements are:

- unremitting pain and significant functional impairment for at least 12 months that persists despite at least 6 consecutive months of structured, physician-supervised, conservative medical management including all of the following components:

  - exercise, including core stabilization exercises

  - nonsteroidal and/or steroid medication (unless contraindicated)

  - physical therapy, including passive and active treatment modalities

  - activity/lifestyle modification

- single level degenerative disc disease, demonstrated on appropriate imaging studies (i.e., computerized tomography [CT] scan, magnetic resonance imaging [MRI], or discography) as the likely cause of pain

- documentation from a primary care physician, neurologist, physiatrist, psychiatrist or psychologist indicating both of the following:

  - absence of untreated, underlying psychological conditions/issues (e.g., depression, drug and alcohol abuse) as a contributor to chronic pain

  - a statement indicating that the individual has completed a course of cognitive behavioral therapy (e.g., 8–10 sessions, face-to-face interaction, may also include group sessions, problem-focused/action-oriented)

- the individual is a non-smoker or will refrain from use of tobacco products for at least 6 weeks prior to surgery

(*Id.* (bracketed insertions in original).) Dr. Przybylski stated that the documentation failed to back up any of these requirements save for the non-smoking requirement. (R.

6

at 419–20.)

Dr. Przybylski's denial letter stated that Concilio had 180 days to file an internal appeal, to be reviewed by a different physician, either by calling a specified phone number or writing to a specified address. (R. at 420–21.) Neither Concilio nor Dr. Cain initiated an internal appeal. Rather, Dr. Cain telephoned Dr. Przybylski to dispute the distinction he had made between single-level and multi-level fusions. (R. at 417.) The two doctors also discussed the "Brox" and "Fritzell" studies, which Dr. Przybylski cited in support of Cigna's position. (*Id.*) Dr. Przybylski "provided appeal information" but did not change his mind. (*Id.*) As already noted, neither Concilio nor Dr. Cain appealed (within 180 days or otherwise).

## C.   Dr. Rauzzino

### 1.   Second Opinion

Shortly after Dr. Przybylski's denial, Concilio sought a second opinion regarding ALIF surgery from Dr. Michael Rauzzino, a neurosurgeon who focuses on spinal procedures. (R. at 432.) In his review of Concilio's past treatments, he noted, "She has never had injections. She has had physical therapy." (*Id.*) After a "long talk" with Concilio, Dr. Rauzzino concluded,

> I think that the surgery proposed by Dr. Cain is reasonable . . . . I do not know that there is any additional therapy to be done. I do not think that epidural steroid injections would be helpful to her. I agree that she has discogenic back pain based on her studies. Given the severity of the findings and the concordancy of discography and the radiographic extravasation of dye, I think she would be a good candidate for an L4-S1 fusion. My only concern is performing such an aggressive procedure at age 26. However, she is quite limited by her symptoms and is finding it increasingly difficult to work. I think that it is therefore reasonable to proceed with such a surgery provided she has reasonable expectations of the risks, benefits, and outcome.

7

(R. at 434.)

During a follow-up visit in September 2014, Dr. Rauzzino re-affirmed his previous opinion.  (R. at 430–31.)

### 2.     Denial of Pre-Service Authorization

Dr. Rauzzino submitted a new request for the two-level ALIF procedure, which Cigna—again per Dr. Przybylski—denied in October 2014.  (R. at 444.)  Dr. Przybylski's reasoning is largely a verbatim reproduction of his denial of Dr. Cain's request.  (R. at 444–46.)  Like Dr. Cain, Dr. Rauzzino then telephoned Dr. Przybylski to dispute the distinction between single-level and multi-level fusion procedures.  (R. at 442.)  They discussed the Brox and Fritzell studies, and Dr. Rauzzino disputed Dr. Przybylski's interpretation of those studies.  Dr. Przybylski also shared that, in his medical practice, he had ceased performing multi-level fusions in the year 2000 when he observed limited benefits in his patients.  (R. at 443.)

### 3.     First Appeal

In November 2014, Dr. Rauzzino timely appealed Dr. Przybylski's decision. (R. at 452.)  In his appeal letter, Dr. Rauzzino stated that he serves on an advisory board to Colorado's workers' compensation system, and that the board had concluded "based on evidence-based medicine" that "two-level lumbar fusion with discography is not an experimental procedure but is, in fact, an appropriate procedure for which injured workers routinely undergo care here in the state of Colorado."  (R. at 453.)

Dr. Rauzzino attached a treatment note describing Concilio's follow-up visit to his office earlier that month.  (R. at 455.)  His note includes the following narrative about the course of conservative treatment, obviously aimed at the requirements for single-level fusion quoted in Dr. Przybylski's denial letters:

> She has gone through the appropriate conservative therapy
> including over a year of consecutive months of medical
> management including core stabilization exercises,
> nonsteroidal anti-inflammatories, steroid medications,
> physical therapy with both active and active modalities, and
> activity modification. There are no psychological issues
> involved; she is not being treated for depression and at this
> point I do not believe that she needs cognitive behavioral
> therapy to treat discogenic pain in her lower back. There are
> no other confounding issues; there is no tobacco or alcohol
> abuse and there do not appear to be any issues of
> secondary gain.

(*Id.*) Dr. Rauzzino concluded that Concilio had "failed conservative therapy." (*Id.*)

In December 2014, the Cigna physician assigned to the appeal, an orthopedic surgeon named Dr. David Mino, upheld Dr. Przybylski's decision. (R. at 474.) Dr. Mino specifically noted, "No spondylolisthesis [cracking of the vertebrae that can cause instability] or other significant instability . . . ." (*Id.*) Given that, he agreed with Dr. Przybylski that "[m]ultilevel lumbar fusion is considered to be experimental, investigational and/or unproven" as a treatment for Concilio's condition. (R. at 474–75.) Dr. Mino concluded with instructions on how to file an external appeal and thereby obtain an independent review. (R. at 476–77.)

A few weeks later, Dr. Rauzzino sent a letter to Cigna "revisiting" the appeal and attaching the Colorado workers' compensation medical guidelines he had referenced in the initial letter. (R. at 485.)

### 4. Second Appeal

It is not clear whether Cigna considered Dr. Rauzzino's second letter to be a request for a second appeal. In any event, Dr. Rauzzino eventually requested such an appeal, which the Texas Department of Insurance (Cigna's regulator for purposes of Concilio's health plan) referred to a company known as "IMED." (R. at 528.) In March

2015, an unnamed neurosurgeon in IMED's employ upheld Cigna's decision.  (R. at 530.)

The IMED reviewer noted two studies ("Mummaneni, et al." and "Phillips") that support the use of ALIF for persons with clinical signs and findings such as Concilio's if such a person's "chronic low pain [has been] refractory [*i.e.*, resistant] to non-surgical care."  (R. at 532 (quoting the Phillips study).)  In describing these studies, the reviewer did not mention any distinction between single-level and multi-level fusion procedures.  "However," said the reviewer, "the records do not conclusively indicate that the patient has failed all lesser measures."  (*Id.*)  In other words, the reviewer concluded that Concilio's condition had not been "refractory to non-surgical care."  The reviewer thus upheld Cigna's determination that the ALIF procedure was not medically necessary.  (*Id.*)

In reaching his or her conclusion, the IMED reviewer had before him or her most of Concilio's medical records and other submissions.  (R. at 530–31.)  But Cigna apparently failed to send any of Dr. Cain's treatment notes to IMED.  (*See id.*)

**D.    Dr. Mobley**

1.    Third Opinion

Concilio sought a third opinion from Dr. Lloyd Mobley, a neurosurgeon, in April 2015.  (R. at 546.)  Unlike Drs. Cain and Rauzzino, Dr. Mobley additionally diagnosed spondylolisthesis and stated that Concilio's condition would cause her to "experience destabilization, requiring stabilization and fusion."  (R. at 549.)  He specifically recommended the two-level ALIF "for the most stable construct."  (*Id.*)

2.    Denial of Pre-Service Authorization

Dr. Mobley's request for pre-service authorization specifically noted

"spondylolisthesis" and "instability" (R. at 542), but Dr. Przybylski again denied authorization for the same reasons as before (R. at 574–78). Dr. Przybylski again provided instructions on how to initiate an appeal (R. at 576–77), but neither Dr. Mobley nor Concilio initiated an appeal. Concilio went ahead with the surgery anyway in July 2015, for which Dr. Mobley and other relevant actors billed her approximately $377,000. (R. at 598–606, 721–29.)

## E.     This Lawsuit

Concilio filed this lawsuit in Colorado state court in June 2016 (*see* ECF No. 2) and it was removed to this Court the following month (ECF No. 1).

## III.  ANALYSIS

## A.     Exhaustion

### 1.     General Standard

An ERISA plan participant may not challenge a denial of plan benefits unless the participant exhausts any internal review procedures made mandatory by the plan itself. *See McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) ("ERISA contains no explicit exhaustion requirement although we have observed 'exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief.'" (quoting *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir.1990))).

> Nevertheless, because ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion. In exercising that discretion, district courts have eschewed exhaustion under two limited circumstances: first, when resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate.

*Id.* (internal quotation marks and citations omitted; alterations incorporated).

2.     <u>Exhaustion as to Dr. Cain's and Dr. Mobley's Requests</u>

As noted above (Part II.A), Concilio's plan required her to internally appeal any initial denial. No party disputes that Concilio satisfied this requirement as to Dr. Rauzzino's pre-service authorization request. It is also undisputed, however, that Concilio did not follow Cigna's prescribed steps for internally appealing Cigna's denials of Dr. Cain's and Dr. Mobley's requests.

The Recommendation contains the following findings and conclusions as to this matter:

- Contrary to Concilio's argument, there is no basis for considering all three of Cigna's denials to be part and parcel of a single continuing claim; therefore, exhaustion was required as to all three unless an exception applies. (ECF No. 35 at 10–11.)

- The futility exception applies to the denial of Dr. Cain's request because his request was materially indistinguishable from Dr. Rauzzino's request, so it is beyond doubt that Cigna would have resolved any appeal of its first denial (stemming from Dr. Cain's request) as it did its second denial (stemming from Dr. Rauzzino's request). Exhaustion of the first denial is thus excused. (*Id.* at 11–13.)[1]

---

[1] Notably, this conclusion favors Concilio, not Cigna, and Cigna filed no opposition. In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The Court finds no clear error in this conclusion and therefore adopts it.

- The futility exception (the only exception for which Concilio argued) does *not* apply to the denial of Dr. Mobley's request (the third denial), because Dr. Mobley's request added a potentially significant new factor into the analysis, namely, spinal instability. Thus, exhaustion of the third denial was not excused. (*Id.* at 13.)

In her Objection, Concilio renews her argument that all three denials should be considered sub-parts of a single claim because all three denials relate to the same procedure. (ECF No. 36 at 2.) Therefore, she says, her exhaustion as to Dr. Rauzzino's request should cover all three denials. (*Id.*) However, she cites no authority for the proposition that multiple requests for the same procedure constitute a single "claim" for purposes of exhaustion.

Moreover, Concilio's argument simply does not fit with the way that courts must evaluate ERISA disputes such as this one. As explained further below (Part III.B.1), this Court reviews ERISA decisions based on the information before the decisionmaker at the time it made its decision. If a claimant makes multiple requests for pre-service authorization, presumably each request provides more or different information to the decisionmaker. Concilio convinced the Magistrate Judge that this presumption had been rebutted with respect to Dr. Cain—or in other words, there was no material difference between Dr. Cain's request and Dr. Rauzzino's request, so exhaustion of Dr. Cain's request was excused as futile because the appeal of Dr. Rauzzino's request shows what would have happened had Concilio appealed Dr. Cain's request. But this futility finding implicitly reinforces the general rule, and therefore refutes Concilio's position that the Court may routinely lump multiple requests and denials into a single

"claim" for exhaustion purposes.

Concilio also challenges the Magistrate Judge's conclusion that the futility exception does not apply to Dr. Mobley's request. Concilio claims that "[s]tanding radiographs reviewed by a neuroradiologist for the express purpose of exploring whether [she] suffered from . . . instability showed no instability at L4-5." (ECF No. 36 at 3.)[2] Thus, "[t]here is no way that Dr. Mobley could have demonstrated spinal instability such that he might have been successful on appeal." (*Id.* at 3–4.)

This argument implicitly concedes the Magistrate Judge's point, *i.e.*, that Dr. Mobley indeed provided additional, potentially material information when he diagnosed spinal instability. Moreover, although this information did not sway Dr. Przybylski, the Court cannot say with certainty that it would have had no effect on Cigna's internal appellate reviewer. *See Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1110 (D. Colo. 2016) ("the bar for showing futility is high"). When Dr. Mino decided Dr. Rauzzino's first appeal, he specifically noted the lack of "spondylolisthesis or other significant instability." (R. at 474.) Accordingly, the Court adopts the Magistrate Judge's conclusion that appeal of the denial of Dr. Mobley's request would not have been futile. Concilio accordingly did not exhaust her remedies as to that denial and the Court may not review it.

## B. Merits Analysis

The Court turns to the merits analysis of Cigna's denial of Dr. Cain's and Dr. Rauzzino's requests. The Magistrate Judge, consistent with his conclusion that Dr. Cain's request would have been addressed on appeal in essentially the same way as

---

[2] It is unclear why Concilio leaves out discussion of L5-S1, but the Court has been pointed to no evidence predating Dr. Mobley's diagnosis that instability existed at that level.

Dr. Rauzzino's request, analyzed the merits as if Drs. Cain and Rauzzino had submitted a single combined request.  No party argues that this approach was error, and the Court does not find it clearly erroneous in light of the Magistrate Judge's futility finding and the reasoning behind it.  The Court will therefore take the same approach.

      1.    <u>ERISA Standard of Review on the Merits</u>

"When an individual covered by [an ERISA-governed employee benefit] plan makes a claim for benefits, the [plan] administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits.  If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan."  *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; certain alterations incorporated).  Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws.  29 U.S.C. § 1144(a).

Normally when the ERISA-governed plan at issue "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the plan administrator's denial of benefits is reviewed under an arbitrary and capricious standard.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The plan at issue here delegates such discretionary authority to Cigna. (R. at 53, 127.)  The Court will therefore analyze Cigna's decision under the arbitrary and capricious standard.

"When reviewing a plan administrator's decision to deny benefits, [the Court] consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious."  *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362

(10th Cir. 2009) (internal quotation marks omitted). The Court is further limited to reviewing the administrator's decision in light of the information before the administrator when it made its decision. *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) ("in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the 'administrative record'—the materials compiled by the administrator in the course of making his decision").

### 2. Denial of Dr. Cain's and Dr. Rauzzino's Requests

#### a. *Initial Denial (Dr. Przybylski) & Internal Appeal (Dr. Mino)*

Drs. Przybylski and Mino both concluded that multi-level ALIF procedures are experimental, investigational, and/or unproven. (*See* Parts II.B.3 & II.C.2–3, above.) Concilio challenges these conclusions, but the Court agrees with the Magistrate Judge that Concilio, at best, demonstrates "a mere disagreement among physicians" on the subject. (*See* ECF No. 35 at 14–17.) The various doctors disputed the literature and offered competing first-hand accounts of the effectiveness of the procedure.

An ERISA plan administrator is not required to "accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). "[T]he job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans." *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 728 (10th Cir. 2012) (quoting *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007)). Accordingly, the Court adopts the Magistrate Judge's conclusion that Drs. Przybylski's and Mino's

determinations were not arbitrary or capricious.[3]

### b. *External Appeal (IMED)*

Notably, IMED did *not* adopt Cigna's internal conclusion that multi-level fusion is experimental, investigational, or unproven. Had IMED gone on to find in Concilio's favor, Cigna would have been required to "abide by" IMED's decision, despite Cigna's internal views on the unproven nature of the procedure. (R. at 48, 130.)

Concilio asserts that the IMED decision supports her position to the extent IMED "correctly recognized that fusion surgery is effective and appropriate for treatment of degenerative disc disease." (ECF No. 36 at 9.) But, Concilio argues, the IMED reviewer arbitrarily and capriciously concluded that Concilio had not failed lesser treatment measures. (*Id.*)

Concilio's argument implicitly concedes that IMED appropriately considered whether conservative therapy had failed. Indeed, the studies on which IMED relied (and which Concilio endorses as well, *see* ECF No. 26 at 14) specifically address pain that has been "refractory to non-surgical care." (R. at 532 (internal quotation marks

---

[3] The Magistrate Judge also addressed Dr. Przybylski's invocation of the single-level ALIF criteria: "The Court admits it is confused by Dr. Przybylski's reasoning here. . . . Whether Concilio meets these conditions is irrelevant because she never requested a single-level fusion." (ECF No. 35 at 16; *see also* Part II.B.3, above.) But, said the Magistrate Judge, Dr. Przybylski's determination that multi-level ALIF was experimental was sufficient on its own to justify his decision. (ECF No. 35 at 16) From the undersigned's perspective, Dr. Przybylski appears to have presented an implicit *a fortiori* argument, *i.e.*, if Concilio has not met the standards for a single-level fusion, then certainly she has not met the standards for a multi-level fusion. Of course, some of the single-level requirements make no sense as part of an *a fortiori* argument, particularly the requirement for "single level degenerative disc disease." (R. at 419.) But Cigna may have included that requirement simply to reinforce its view that multi-level fusions are unproven. Regardless, Concilio does not object to the Magistrate Judge's treatment of this part of Dr. Przybylski's opinion. She states only that Dr. Przybylski's discussion of single-level ALIF requirements was "symptomatic of a lack of procedural care." (ECF No. 36 at 8.) The Court therefore need not address the Magistrate Judge's conclusion that this part of Dr. Przybylski's opinion may be ignored.

omitted).)[4]  And although Concilio emphasizes that the CT discography procedure confirmed the origin of her pain, she never argues that conservative therapy will always be ineffective for persons whose spinal discs are confirmed pain generators.[5]

Thus, there is no argument before the Court that IMED acted arbitrarily and capriciously by evaluating whether the record established a failure of conservative therapy.  Rather, Concilio argues that the record confirms the many conservative therapies she tried without success, but IMED (and Cigna) established an impossibly high standard: "Given the level of pain she was experiencing, it is unclear what IMED or any of the Cigna reviewers expected Ms. Concilio to do, for how long, and at what cost to her life, before they would deem her attempts at more conservative therapies a failure."  (ECF No. 36 at 9–10.)

In light of this argument, the first question the Court must answer is whether Concilio's premise is correct, *i.e.*, that the record demonstrates a good faith attempt at and failure of conservative therapy.  The Court's initial analysis will focus on the records actually before IMED, which did not include Dr. Cain's treatment notes (*see* Part II.C.4, above).  The records before IMED, particularly Dr. Rauzzino's notes, appear fairly unequivocal in stating that conservative therapy had not alleviated Concilio's pain.  Indeed, Dr. Rauzzino specifically declared that Concilio had gone through all the conservative therapy that could reasonably be required, and it had "failed."  (R. at 455.)

_____

[4] This implicitly supports Dr. Przybylski's choice to discuss the conservative therapies Cigna believes are necessary to try before undergoing single-level fusion.  *See* n.3, above.

[5] Concilio specifically challenges the usefulness of cognitive behavioral therapy (one of Cigna's prerequisites before authorizing single-level fusion surgery), but not conservative therapy generally.  (*See* ECF No. 26 at 25 ("For the same reason that talk therapy cannot alleviate the pain of a broken arm, it could not have alleviated the pain of disrupted spinal discs.").)

Cigna argues, and the Magistrate Judge agreed, that Dr. Rauzzino was actually wrong, as shown by Dr. Cain's records. (*See* ECF No. 29 at 16–19, 26–27; ECF No. 35 at 18–19; ECF No. 37 at 10.) But, again, *IMED did not have Dr. Cain's records before it.* On what basis, then, could IMED conclude that "the records do not conclusively indicate that the patient has failed all lesser measures"? (R. at 532.) The IMED opinion shows no awareness of what conservative therapies Concilio actually tried; does not elaborate on the lesser measures that Concilio reasonably could have taken but did not; points to nothing in the record regarding, *e.g.*, a conservative therapy that Concilio refused to try, or that she abandoned, without reasonable excuse; and entirely fails to address Dr. Rauzzino's opinion that all reasonable conservative therapies had failed. Thus, the Court disagrees with the Magistrate Judge's conclusion that Dr. Rauzzino's treatment notes, on their own, were enough to support a non-arbitrary, non-capricious conclusion that Concilio had failed to exhaust lesser treatment options. (*See* ECF No. 35 at 19.) The record before IMED did not support its one-sentence pronouncement to this effect. To the contrary, the only relevant evidence before IMED showed that conservative measures had indeed failed. Consequently, IMED's conclusion was arbitrary and capricious on the record before it.

The Court further disagrees with the Magistrate Judge's harmless error reasoning. The Magistrate Judge does not explicitly invoke harmless error (*see id.* at 18–19), nor does Cigna's defense of the Magistrate Judge's reasoning (*see* ECF No. 37 at 9–10). Nonetheless, the Magistrate Judge's (and Cigna's) basic point is that, had IMED reviewed Dr. Cain's records, those records would have reinforced IMED's conclusion. That is a standard harmless error analysis. *Cf. Black's Law Dictionary*, *s.v.*

"error [definition 2]" (10th ed. 2014) (defining "harmless error" as "[a] trial-court error that does not affect a party's substantive rights or the case's outcome").[6]

For two reasons, the Court is not convinced that Dr. Cain's records would have led IMED to conclude that "the records do not conclusively indicate that the patient has failed all lesser measures." (R. at 532.) First, IMED's conclusion suggests that it ignored the only relevant medical evidence actually before it (Dr. Rauzzino's records), so the Court can have no confidence that IMED would have paid any greater attention to Dr. Cain's records. Second, IMED never explains what it means by "fail[ing] all lesser measures." Cigna appears to assume that IMED must have had in mind Cigna's own pre-authorization requirements for single-level fusion, but nothing in the record supports that assumption. Rather, IMED's immediate reference was the Phillips study's reference to "non-surgical care." (*See id.* (internal quotation marks omitted).) There is no way for this Court to discern what sorts of non-surgical treatments the Phillips study or IMED would deem to be reasonable prerequisites, and at what point a medical professional could reasonably declare that all of those non-surgical treatments had failed. Accordingly, Cigna's failure to provide Dr. Cain's records to IMED was not harmless, but was, rather, arbitrary and capricious.

## C.    Proper Remedy

"Generally speaking, when a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it can either

_____

[6] Interestingly, the Court could find no case specifically endorsing the concept of harmless error in ERISA appeals. But ERISA appeals borrow heavily from the procedures established for review of administrative agency action, where harmless error is a well-established principle. *See* 5 U.S.C. § 706; *Prairie Band Pottawatomie Nation v. Fed. Highway Admin.*, 684 F.3d 1002, 1008 (10th Cir. 2012). Moreover, no party argues that the Magistrate Judge was incorrect to consider the possibility of harmless error. Accordingly, the Court assumes that such consideration is appropriate.

[vacate and] remand the case to the administrator for a renewed evaluation of the claimant's case, or it can [reverse and] award [the requested] benefits." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (internal quotation marks omitted). Cigna, of course, believes that its denial should be affirmed, and it nowhere requests vacatur and remand in the alternative. But the Tenth Circuit has treated the question of reversal versus remand as a matter for the district court to consider on its own. *See id.* at 1175–76.

> Which of these two remedies is proper in a given case . . . depends upon the specific flaws in the plan administrator's decision. In particular, if the plan administrator failed to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation. In contrast, [award] of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have . . . receive[d] the [requested] benefits or where there was no evidence in the record to support a . . . denial of benefits.

*Id.* (internal quotation marks and citations omitted; certain alterations incorporated).

This case falls into the first category. The Court "cannot say that there is no evidence in the record to support [IMED's] decision, or that the evidence so clearly points the other way as to make a remand unnecessary." *Id.* at 1176. Remand to Cigna for re-submission of the proper record to an Independent Review Organization is therefore appropriate. In doing so, "[Cigna] is directed to 'tak[e] new evidence should [Concilio] wish to submit the same.'" *Id.* (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 32 (1st Cir. 2005)).

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Magistrate Judge's Recommendation (ECF No. 35) is ADOPTED IN PART

and REJECTED IN PART as stated herein;

2.  Defendant's denial of benefits to Concilio is VACATED and REMANDED for re-submission to an Independent Review Organization ("IRO"), in the course of which Concilio will be permitted to submit new evidence, and the IRO will be required to take and consider such new evidence in its decision on remand; and

3.  The Clerk shall enter judgment in favor of Plaintiff and against Defendant, and shall terminate this case. Plaintiff shall have her costs upon compliance with D.C.COLO.LCivR 54.1. Should Plaintiff intend to seek attorneys' fees, she must do so within the time required, and according to the procedures established by, Federal Rule of Civil Procedure 54(d)(2) and D.C.COLO.LCivR 54.3.

Dated this 24th day of July, 2018.

BY THE COURT:

William J. Martinez
United States District Judge